# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 10, 2021          Decided June 15, 2021

No. 20-3061

UNITED STATES OF AMERICA,
APPELLEE

v.

MELVIN LAWRENCE,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:03-cr-00092-1)

---

*William L. Welch, III*, appointed by the court, argued the cause and filed the briefs for appellant.

*David B. Goodhand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Elizabeth Trosman*, *John P. Mannarino*, and *Timothy R. Cahill*, Assistant U.S. Attorneys.

Before: ROGERS, MILLETT, and WILKINS, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: In 2009, the district court sentenced Melvin Lawrence to nearly 21 years in prison for

selling 21.1 grams of crack cocaine. In 2018, Congress enacted the First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222, which permits defendants sentenced for certain crack offenses before August 3, 2010, to seek sentence reductions because of the profound (and disproportionately racial) disparity in the law's prior treatment of crack and powder cocaine offenses. Lawrence then filed a motion for sentence reduction, but the district court reduced his sentence only by the ten months needed to comply with the new statutory maximum.

The sole and narrow question presented in this appeal is whether the law mandated that the district court provide Lawrence the opportunity to allocute—to speak in person to the district court judge—before ruling on his motion for a sentence reduction. Because no categorical right to allocute applies to motions to reduce a sentence under the First Step Act, we affirm the judgment of the district court.

# I

For nearly 25 years, federal criminal law punished offenses involving crack cocaine far more harshly than offenses involving powder cocaine. *See* Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, § 1002, 100 Stat. 3207, 3207–2 to 3207–4; *Dorsey v. United States*, 567 U.S. 260, 263–264 (2012). For instance, the law required a five-year mandatory minimum prison sentence for people convicted of possessing with the intent to distribute either (i) *500* grams of powder cocaine or (ii) *5* grams of crack cocaine—a 100-to-1 disparity. *Dorsey*, 567 U.S. at 263–264. Among other unjust effects, this punishment scheme particularly affected Black defendants, who constituted the large majority of defendants convicted of crack offenses and sentenced to disproportionately long prison terms. *See* U.S. SENT'G COMM'N, 2009 SOURCEBOOK OF

FEDERAL SENTENCING STATISTICS table 34 (2009), https://www.ussc.gov/research/sourcebook/archive/sourcebook-2009 (showing that in 2009, Black defendants constituted 79 percent of defendants convicted of crack cocaine offenses but only 28 percent of defendants convicted of powder offenses); *Kimbrough v. United States*, 552 U.S. 85, 98 (2007); *United States v. White*, 984 F.3d 76, 89–90 (D.C. Cir. 2020).

After two decades of criticism, *see Dorsey*, 567 U.S. at 268, Congress reduced, but did not eliminate, the crack-to-powder disparity in the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372. *See White*, 984 F.3d at 81–82 ("[T]he Fair Sentencing Act * * * reduced the disparity between cocaine base and powder cocaine from 100-to-1 to 18-to-1."). As relevant here, the Fair Sentencing Act amended the penalties for drug distribution under the Controlled Substances Act, 21 U.S.C. § 841(b)(1), by raising the amount of crack cocaine needed to trigger various statutorily mandated sentences. *See* Fair Sentencing Act § 2(a), 124 Stat. at 2372; 21 U.S.C. § 841(b)(1)(A)(iii), (b)(1)(B)(iii). For example, the trigger for a mandatory ten-years-to-life sentencing range was raised from 50 grams of crack to 280 grams. Fair Sentencing Act § 2(a)(1), 124 Stat. at 2372. And the trigger for a mandatory 5-to-40-year sentencing range was raised from 5 grams of crack to 28 grams. *Id.* § 2(a)(2), 124 Stat. at 2372.[1]

But the Fair Sentencing Act's reduced punishments applied only prospectively to defendants sentenced after the Act's effective date of August 3, 2010. *Dorsey*, 567 U.S. at

---

[1] The Fair Sentencing Act did not change the much higher amounts of powder cocaine needed to trigger the same mandatory sentences. Those amounts remain at 5 kilograms (for ten-years-to-life) and 500 grams (for a 5-to-40 year sentence). *See* 21 U.S.C. § 841(b)(1)(A)(ii), (b)(1)(B)(ii).

4

264; *White*, 984 F.3d at 82.  Defendants sentenced prior to that date remained subject to their original sentences.[2]

Eight years went by before Congress turned to the defendants left serving sentences imposed under the disparately more punitive sentencing regime.  In Section 404 of the First Step Act, Congress empowered district courts to reduce existing sentences for people convicted of certain crack cocaine offenses.  *See* First Step Act § 404, 132 Stat. at 5222; 21 U.S.C. § 841 note (2019) ("Application of Fair Sentencing Act").  Section 404 proceeds in three parts.

First, Section 404 applies to a "covered offense[,]" which means "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010."  First Step Act § 404(a), 132 Stat. at 5222 (internal citation omitted).

Second, Section 404 provides that the original sentencing court "may," on motion of the defendant, the government, or the court itself, "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time

---

[2] After the passage of the Fair Sentencing Act, the Sentencing Commission revised the Sentencing Guidelines to "reduc[e] the base offense levels for all crack amounts proportionally (using the new 18-to-1 ratio)," *Dorsey*, 567 U.S. at 276, and made those revisions retroactive.  *See* U.S. SENT'G GUIDELINES MANUAL app. C, amends. 750, 759 (2011).  While some already-sentenced defendants could seek a sentence reduction under those revised Guidelines pursuant to 18 U.S.C. § 3582(c)(2), the new Guidelines did nothing to alter the *statutory* mandatory minimums applicable to defendants sentenced prior to August 3, 2010.  *See United States v. Swangin*, 726 F.3d 205, 208 (D.C. Cir. 2013).

the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222 (internal citation omitted). In that way, Section 404 authorizes courts to apply the Fair Sentencing Act's crack-cocaine reforms retroactively. *See White*, 984 F.3d at 82.

Third, Section 404 sets out certain "[l]imitations" on the relief available. First Step Act § 404(c), 132 Stat. at 5222. Courts may not entertain motions under Section 404 if the "sentence was previously imposed or previously reduced in accordance with" the Fair Sentencing Act. *Id.* Courts also may not entertain renewed motions under Section 404 if a previous Section 404 motion was "denied after a complete review of the motion on the merits." *Id.* And finally, "[n]othing in [Section 404] shall be construed to require a court to reduce any sentence pursuant to [Section 404]." *Id.*

In short, Section 404 creates a process through which defendants sentenced for a qualifying offense under the prior, disparate sentencing regime may seek a sentence reduction, which the district court may grant in its discretion.

The district court's discretion in adjudicating a Section 404 motion is "broad" but not "unfettered[.]" *White*, 984 F.3d at 88. The district court's judgment "must take account of Congress's intent to rectify disproportionate and racially disparate sentencing penalties." *Id.* at 81. To that end, the district court must consider "all relevant factors[,]" *id.* at 93, including not only the sentencing factors outlined at 18 U.S.C. § 3553(a), *id.* at 92–93, but potentially also "new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct[,]" *id.* at 90 (quoting *United States v. Hudson*, 967 F.3d 605, 609 (7th Cir. 2020)). The district court must also consider relevant mitigating evidence

offered by the defendant. *Id.* at 92–93. As with other sentencing decisions, *see Gall v. United States*, 552 U.S. 38, 51 (2007), sentence-reduction decisions under Section 404 "must be procedurally reasonable and supported by a sufficiently compelling justification[,]" *White*, 984 F.3d at 91 (quoting *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020)).

## II

This is Melvin Lawrence's third appearance before this court.

## A

In 2003, Lawrence was convicted of unlawful distribution of 5 grams or more of cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), and three charges related to possession of drugs and firearms. On appeal, we affirmed Lawrence's conviction on the distribution charge, but we reversed his convictions on the three possession charges and remanded for resentencing. *United States v. Lawrence*, 471 F.3d 135, 143 (D.C. Cir. 2006).

On remand, the district court held a new sentencing hearing, in which Lawrence allocuted. Resentencing Transcript at 11–12, *United States v. Lawrence*, No. 03-cr-00092-CKK (D.D.C. Oct. 5, 2009), ECF No. 103. Lawrence told the court that, while incarcerated, he had "been trying to do the right things as far as * * * becoming a man so I can provide for my son, he's 11 and very big." *Id.* Lawrence's mother was "getting old" and does "the best that she can[,]" but his son had "health issues as far as * * * weight gain and a lot of other things." *Id.* at 12. Lawrence explained that he "just want[ed] a chance to be a father" to his son, and that he "was just hoping that it's possible that * * * I can get out in his life before * * * the streets * * * or anything that maybe I have

done affect him[.]" *Id.* He said he wanted to "be a productive citizen[,]" and noted that he "read the Bible" and "attended church, school, [and] college." *Id.* He admitted that he had "gotten into some altercations," but "not because I wanted to, but it's prison, and you know, there's all types of people in prison." *Id.* While "making no excuses" for his actions, he said he "was just hoping the Court would have leniency" in his "particular case." *Id.*

Based on the single crack cocaine distribution conviction and the district court finding that Lawrence was a career offender, Lawrence's Sentencing Guidelines range was 262 to 327 months. In addition, because Lawrence's offense involved 21.1 grams of crack, Lawrence was subject to a mandatory minimum prison term of five years (60 months) and a statutory maximum of 40 years (480 months). *See* 21 U.S.C. § 841(b)(1)(B)(iii) (2009). The district court granted Lawrence a downward variance of twelve months based on the court's disagreement with the crack–powder disparity in the Guidelines. The court rejected Lawrence's request for a larger downward variance and sentenced him to 250 months of imprisonment to be followed by five years of supervised release.

We affirmed Lawrence's sentence in 2011. *United States v. Lawrence*, 662 F.3d 551, 564 (D.C. Cir. 2011).

**B**

In 2019, following the passage of the First Step Act, Lawrence filed a *pro se* motion in district court requesting that his sentence be reduced to time served, which at that time was 209 months—more than seventeen years. The district court appointed counsel for Lawrence, and counsel filed a supplemental motion explaining that, in light of the Fair Sentencing Act's amended sentencing ranges, Lawrence's

conviction now subjected him only to a 0-to-20-year sentencing range rather than the 5-to-40-year range applied at his original sentencing. *See* 21 U.S.C. § 841(b)(1)(B), (C). The supplemental motion also recalculated Lawrence's Guidelines range as 210 to 262 months of imprisonment. In addition, Lawrence argued that time served would be an appropriate reduced sentence given his age (50 years old), consistent with the sentencing factors outlined at 18 U.S.C. § 3553(a). Finally, Lawrence's supplemental motion incorporated the arguments from his *pro se* motion, which, as relevant here, had argued that under Section 404, the district court had "authority to conduct a full resentencing * * * in the defendant's presence." J.A. 39, 49.

The government did not oppose a ten-month reduction in Lawrence's sentence from 250 months to 240 months because that was necessary to bring the sentence down to the revised statutory maximum of twenty years. *See* 21 U.S.C. § 841(b)(1)(C). But the government opposed any further sentence reduction. The government also argued that Section 404 proceedings do not require a hearing at which the defendant is present.

The district court granted a sentence reduction to 240 months imprisonment and three years of supervised release, but denied any further reduction in Lawrence's sentence. It ruled first that no hearing with the defendant present was required, pointing to the Supreme Court's decision in *Dillon v. United States*, 560 U.S. 817 (2010), and Rule 43 of the Federal Rules of Criminal Procedure. On the merits, the court ruled that no reduction beyond the unopposed adjustment of the sentence down to 240 months was warranted. The court pointed to Lawrence's "long criminal history and the danger to public safety[,]" as well as his "age, risk of recidivism, and * * * long disciplinary record while incarcerated[.]" J.A. 115.

Lawrence timely appealed.

**III**

We possess appellate jurisdiction under 28 U.S.C. § 1291, which provides for review of "final decisions" of the district court. *See United States v. Long*, --- F.3d ---, No. 20-3064, 2021 WL 1972245, at *5 (D.C. Cir. May 18, 2021); *United States v. Jones*, 846 F.3d 366, 369 (D.C. Cir. 2017) ("Denials of sentence reductions are unquestionably 'final decisions of a district court' because they close the criminal cases once again.") (brackets omitted).

**IV**

Lawrence argues that the district court "should have allowed Mr. Lawrence to speak in allocution" and address the court personally before his sentence was imposed. Lawrence Br. 7. This court has not decided whether a district court's failure to provide allocution is subject to harmless error review. *See United States v. Abney*, 957 F.3d 241, 247 (D.C. Cir. 2020) (noting that this court "ha[s] not weighed in on the review framework"). *But see also id.* at 254 ("Given the importance of the allocution right, there may be few, if any, cases in which its unremedied denial would not undermine the fairness of the judicial process."). We do not reach that question today because Lawrence has failed to demonstrate that any error— harmless or not—occurred. Simply put, Lawrence was not categorically entitled to an opportunity for allocution as part of his Section 404 proceedings under the First Step Act, and he

has made no claim that allocution was necessary in the particular circumstances of his case.[3]

**A**

Once a federal criminal sentence is imposed, it is generally considered final. *See* 18 U.S.C. § 3582(b); *see also* 18 U.S.C. § 3742. Nonetheless, 18 U.S.C. § 3582(c) sets out three circumstances in which a lawfully imposed term of imprisonment may be modified. First, certain prisoners may be granted compassionate release due to their advanced age or for other "extraordinary and compelling reasons[.]" *Id.* § 3582(c)(1)(A); *Long*, 2021 WL 1972245, at *1. Second, prison terms can be modified "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure[.]" 18 U.S.C. § 3582(c)(1)(B). And third, courts can entertain motions to reduce prison terms if the applicable sentencing range for the defendant has been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c)(2); *Dillon*, 560 U.S. at 824–825.

This case implicates the second of those three exceptions. In the First Step Act, Congress provided authority for courts to reduce sentences already imposed. So reductions under the Act fall within 18 U.S.C. § 3582(c)(1)(B)'s exception for sentence modifications "expressly permitted by statute[.]" *See United States v. Concepcion*, 991 F.3d 279, 287 (1st Cir. 2021); *United*

---

[3] Lawrence also argues that "he is not a 'Career Offender.'" Lawrence Br. 15. Because the argument is conclusory and fails to provide any legal or factual support for the court to consider, we reject that claim. He also suggests in his reply brief that the district court erred by failing to "consider disparity" in Lawrence's sentence. Reply Br. 5–6. But arguments raised for the first time in a reply brief are forfeited. *United States v. Powers*, 885 F.3d 728, 734 (D.C. Cir. 2018).

*States v. Denson*, 963 F.3d 1080, 1087 (11th Cir. 2020); *United States v. Moore*, 975 F.3d 84, 89 (2d Cir. 2020); *United States v. Wirsing*, 943 F.3d 175, 184 (4th Cir. 2019); *see also United States v. Sutton*, 962 F.3d 979, 985 (7th Cir. 2020) (Section 3582 "removes a potential obstacle to relief otherwise authorized" by the First Step Act.).

**B**

Allocution is the "right * * * to address the sentencing judge before imposition of a sentence." *Abney*, 957 F.3d at 249; *see United States v. Roberts*, 570 F.2d 999, 1010 (D.C. Cir. 1977). This right is "deeply rooted in our legal tradition[,]" and "serves several interrelated purposes, including eliciting information relevant to mitigation or mercy, demonstrating to the public that the courts treat criminal defendants in an individualized, fair, and openminded manner, and simply acknowledging the defendant's humanity." *Abney*, 957 F.3d at 250.

The right of allocution before the imposition of a criminal sentence following conviction is now "codified in the Federal Rules of Criminal Procedure[.]" *Abney*, 957 F.3d at 249; *accord United States v. Behrens*, 375 U.S. 162, 165 (1963); *Green v. United States*, 365 U.S. 301, 304 (1961); *Couch v. United States*, 235 F.2d 519, 523–524 (D.C. Cir. 1956). Specifically, Rule 32 requires the district court, before imposing a sentence, to "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence[.]" FED. R. CRIM. P. 32(i)(4)(A)(ii).

The problem for Lawrence, however, is that Federal Rule of Criminal Procedure 43 is explicit that the right of allocution does not apply to a sentence-reduction proceeding conducted after a sentence has formally been imposed. More specifically,

Rule 43 provides that the general requirement that a defendant be "present" at "sentencing" does not apply to a proceeding involving "the correction or reduction of [a] sentence under * * * 18 U.S.C. § 3582(c)." FED. R. CRIM. P. 43(b)(4). And Section 3582(c)—specifically, Section 3582(c)(1)(B)—is the vehicle by which Lawrence is able to press his motion for First Step Act relief. *See Wirsing*, 943 F.3d at 183.[4]

Nothing in 18 U.S.C. § 3582(c)(1)(B) provides a categorical right to allocution either. As relevant here, that provision states simply that a court "may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute[.]" *Id*. On its face, all this provision does is reconcile sentence modification statutes like the First Step Act with the criminal law's general rule of sentence finality.

Section 404 of the First Step Act is similarly of no help to Lawrence's allocution argument. It says only that courts may reduce sentences for defendants convicted of certain crack offenses "on motion" of the defendant, the government, or the court "as if section 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222 (internal citation omitted). Nothing in the text or structure of Section 404, however, categorically requires that district courts provide an opportunity for the defendant to allocute before ruling on such a motion.

---

[4] A Federal Rule of Criminal Procedure is "as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions." *Bank of N.S. v. United States*, 487 U.S. 250, 255 (1988); *see* 28 U.S.C. § 2072 ("All laws in conflict with such rules shall be of no further force or effect[.]").

That is not to say that district courts do not have weighty obligations in conducting Section 404 proceedings. For starters, the court's resolution of the motion for sentence reduction must "take into account Congress's purposes" in passing the Fair Sentencing Act and the First Step Act, which "together[] are strong remedial statutes, meant to rectify disproportionate and racially disparate sentencing penalties." *White*, 984 F.3d at 89–90. In that regard, district courts must consider "all relevant factors," including "new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct." *Id.* at 90, 93 (quoting *Hudson*, 967 F.3d at 609). In *White*, we emphasized the particular relevance of post-sentencing conduct and the sentencing factors listed in 18 U.S.C. § 3553(a). 984 F.3d at 90–91. Additionally, district courts must give due consideration to relevant mitigating evidence offered by the defendant. *Id.* at 92–93. And sentence-reduction decisions under Section 404 "must be procedurally reasonable and supported by a sufficiently compelling justification." *Id.* at 91 (quoting *Boulding*, 960 F.3d at 784).

But nothing in those duties includes a categorical requirement that defendants, who presumptively already allocuted at their original sentencing, be afforded the opportunity to allocute again.

## C

On appeal, Lawrence invokes the common law and Federal Rule of Criminal Procedure 32 as sources for his

asserted right to allocute. *See* Lawrence Br. 9–10; Reply Br. 8–9.[5]

The short answer is that Federal Rule of Criminal Procedure 43 expressly carves sentence-reduction proceedings like this out of Rule 32's compass. Under Federal Rule of Criminal Procedure 43, a defendant by law need not even be present at a Section 404 sentence-reduction proceeding. FED. R. CRIM. P. 43(b)(4) ("A defendant need not be present * * * [when] [t]he proceeding involves the correction or reduction of sentence under * * * 18 U.S.C. § 3582(c)."). That necessarily means that defendants do not possess a categorical right to be present to allocute at such proceedings. *See United States v. Mannie*, 971 F.3d 1145, 1156 (10th Cir. 2020); *cf. Dillon*, 560 U.S. at 828 ("Rule 43 therefore sets the proceedings authorized by § 3582(c)(2) * * * apart from other sentencing proceedings.").

To that same point, the common law and Rule 32 right to address the court in allocution applies "*before* the sentence is imposed[.]" *Abney*, 957 F.3d at 250; *see* FED. R. CRIM. P. 32(i)(4)(A)(ii) (court must afford right to allocute "[b]efore imposing sentence"). Lawrence already exercised that allocution right when his sentence was imposed in 2009. Nothing in the common law or Rule 32 requires a *second* opportunity for allocution in a Section 404 proceeding that just considers reducing that already-imposed sentence. *See Long*, 2021 WL 1972245, at \*5 ("[B]y definition, a sentence must already have been imposed before a sentence-modification rule may be invoked and a sentence reduction contemplated.")

---

[5] Lawrence does not assert any constitutional right to allocution. His briefs invoke only a right of allocution "grounded in the common law." Lawrence Br. 9.

(internal quotation marks omitted) (quoting *United States v. McAndrews*, 12 F.3d 273, 277 (1st Cir. 1993)).

If Lawrence means to equate a Section 404 proceeding with an original sentencing and all of its requirements, he is mistaken. While a Section 404 proceeding is a weighty one, it differs meaningfully from an original sentencing.

Most notably, the district court in a Section 404 proceeding has no authority to increase a defendant's sentence. The proceeding will either benefit the defendant or leave him with the same sentence already imposed (and for which he already had the right and opportunity to allocute). First Step Act § 404(b), 132 Stat. at 5222 (district court may impose only "a reduced sentence" or leave the sentence unchanged). So unlike an original sentencing, a Section 404 proceeding cannot result in any additional deprivation of liberty. Instead, by the time of the First Step Act proceeding, "the purpose of allocution—to allow the defendant the opportunity to challenge the information the original sentencing judge will rely upon as well as to present evidence in mitigation—has already been accomplished." *United States v. Jackson*, 923 F.2d 1494, 1498 (11th Cir. 1991); *see Mannie*, 971 F.3d at 1156 ("We do not disagree * * * as to the importance of the defendant's right of allocution at his initial sentencing; but this is a sentence modification, not an initial sentencing. There are significant differences between the two.") (footnote omitted).

In addition, the Supreme Court ruled in *Dillon* that a similar sentence-reduction proceeding "[b]y its terms * * * does not authorize a sentencing or resentencing proceeding[,]" but instead "provides for the 'modification of a term of imprisonment' by giving courts the power to 'reduce' an otherwise final sentence[.]" 560 U.S. at 825 (brackets omitted). In *Dillon*, the Court was analyzing Section

3582(c)(2)—which immediately follows Section 3582(c)(1)(B), the provision at issue here. Subsection (c)(2) permits district courts to reduce a prison term for a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(2). The Court held that, even though proceedings under Section 3582(c)(2) involve consideration of the Section 3553(a) sentencing factors, a district court resolving such a motion for sentence reduction "does not impose a new sentence in the usual sense." *Dillon*, 560 U.S. at 827.

The exact same rationale applies here. While the district court may "impose" a different sentence in a Section 404 proceeding, First Step Act § 404(b), 132 Stat. at 5222, it does not do so "in the usual sense[,]" *Dillon*, 560 U.S. at 827. Instead, Section 404 authorizes a special type of post-sentencing proceeding in which the district court must undertake a distinct analysis to determine whether, as a matter of discretion, an already-imposed sentence should be reduced, with an eye towards "provid[ing] a remedy for defendants who bore the brunt of a racially disparate sentencing scheme." *White*, 984 F.3d at 91. While the court considers the Section 3553(a) sentencing factors, it does so for that different statutory purpose.

And importantly, for purposes of the issue in this case, nothing in the text of Section 3582(c)(1)(B) meaningfully differentiates it from Section 3582(c)(2)—the provision at issue in *Dillon*. Section 3582(c)(1)(B) empowers courts to "modify an imposed term of imprisonment," and Section 3582(c)(2) permits courts to "reduce the term of imprisonment[.]" Neither provision contemplates a complete do-over of the sentencing process with a mandatory new opportunity for allocution.

In sum, nothing in Section 404 of the First Step Act, the sentence modification provision of 18 U.S.C. § 3582(c)(1)(B), the common law, or the Federal Rules of Criminal Procedure supports Lawrence's proposed categorical right to allocution in Section 404 sentence-reduction proceedings. We hold that there is no such right.

**D**

Of course, even though defendants do not possess a *categorical* right to allocute as part of a Section 404 proceeding, district courts may choose to allow allocution as an exercise of their reasoned discretion. And nothing in our holding addresses whether, in the circumstances of a particular case, allocution might be warranted or required. That is because Lawrence has not made any as-applied claim of a right to allocute. Nor could his counsel, at oral argument, provide any reason why a new opportunity for allocution would have been uniquely useful or appropriate in this case. *See* Transcript of Oral Argument at 8–9. The only question in this case is whether an absolute right to allocute exists, and the district court correctly ruled that no such right applies here.

\* \* \* \* \*

Section 404 of the First Step Act "makes possible the fashioning of the most complete relief possible" to address a serious problem of disproportionate and racially inequitable sentencing law. *White*, 984 F.3d at 90 (brackets omitted) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)). "This is no small matter." *White*, 984 F.3d at 90. But neither the statute's text nor its remedial purpose requires that the defendant in every case be given a new opportunity for allocution.

For all of the foregoing reasons, we affirm the judgment of the district court.

*So ordered*.